**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 9, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re:

COOPER TIRE & RUBBER CO.,

      Petitioner.

No. 07-4264

---

**On Petition for Writ of Mandamus to**
**the United States District Court**
**for the District of Utah**
**(D.C. No. 1:06-CV-00108-TC-PMW)**

---

Malcolm E. Wheeler (Marsha M. Piccone and LaMar F. Jost with him on the briefs), Wheeler Trigg Kennedy, L.L.P., Denver, Colorado, for Petitioner.

Brad H. Bearnson (Shawn P. Bailey with him on the brief), Bearnson & Peck, L.C., Logan, Utah, for Real-Parties-In-Interest.

---

Before **LUCERO**, **McCONNELL**, and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

      Petitioner Cooper Tire & Rubber Company ("Cooper") seeks a writ of

mandamus directing the district court to vacate its discovery order and requiring

the district court, on remand, to apply the provisions of Rule 26(b) of the Federal

Rules of Civil Procedure. Specifically, Cooper asserts that the district court erred in not applying the proper standards regarding the scope of relevant information for purposes of discovery, the calculation of whether the requested discovery posed an undue burden, and the determination of whether trade secrets should be revealed. Reviewing the district court's order and the requirements of Rule 26(b), we conclude that Cooper's right to the issuance of the writ is not clear and indisputable. Further, we determine that the issuance of the writ is not appropriate under the circumstances of this case. Accordingly, exercising our jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), we **DENY** Cooper's petition.

## I. BACKGROUND

This case arises from an accident on a Utah highway where the tread belt on a Cooper tire separated, causing the driver to lose control of the vehicle. As a result, the fifteen-passenger van went off the road and rolled over several times before coming to a stop. Nine of the eleven individuals in the van died from the injuries they sustained in the accident. The remaining two passengers suffered severe injuries but survived.

The survivors and heirs of the deceased passengers brought suit against DaimlerChrysler Corporation, DaimlerChrysler Motors Corporation, (collectively "Chrysler") and Cooper. Their complaint asserted various strict products liability, negligence, and breach of warranty claims against Chrysler and Cooper.

With regard to Cooper, the plaintiffs alleged that Cooper knew or should have known that the tires were prone to tread separation within their normal and intended use. Specifically, the plaintiffs claimed that "prior to the production of the Van Tire, Cooper realized that its tires suffered from an unacceptably high rate of tread separations, but deliberately failed to make design changes to combat this knowledge or warn consumers about the problems with its tires." Pet'r App. at 21, 23, 39, 42 (Compl. & Jury Demand, dated Sept. 13, 2006). They alleged that information available to Cooper before production of the tire even began "confirmed that Cooper knew about these dangerous and defective conditions." *Id.* at 21, 23-24, 39, 42.

To substantiate these claims, the plaintiffs sought discovery from Cooper. Cooper, in turn, filed a motion for protection from the plaintiffs' "excessively broad scope" of discovery, asking that discovery instead be limited "to the design of the Green Tire Specification ['GTS'] at issue,[1] the plant at issue, and for a

---

[1] The term "Green Tire Specification" refers to an overall design specification. The GTS includes the dimensions, weights, and physical attributes of the components of a tire, as well as the order in which the components are placed on a tire during manufacturing. Each tire made to the same GTS must have the same size, load carrying capacity, inflation pressure, construction, and materials manufactured in the same way. Tires within the same GTS also must be in the same general use category. GTS is similar to the term "common green" that the National Highway Traffic Safety Administration ("NHTSA") uses to categorize similar tires. "Common green tires means tires that are produced to the same internal specifications but that have, or may have, different external characteristics and may be sold under different tire line names." 49 C.F.R. § 579.4.

reasonable period of time (one year before and one year after the date of manufacture)." *Id.* at 295 (Cooper Tire & Rubber Co.'s Mem. in Supp. of its Mot. for Protection from Pls. Excessive Scope of Disc., dated May 23, 2007). In support of its motion, Cooper argued that the proper scope of discovery was similar products, that is, similar tires in the context of this case. Cooper defined similar tires as those tires manufactured to the same GTS. Accordingly, Cooper asserted that discovery should be limited to the eleven tire brands made to GTS 5015, which is the GTS of the tire at issue.[2] Additionally, Cooper argued that the plaintiffs had not met their burden of demonstrating that the trade secrets they sought were relevant and necessary to the lawsuit.

The plaintiffs then filed a motion to compel, arguing that their discovery requests were specific to the five separate manufacturing and design defects they alleged to exist in the tire at issue[3] and accusing Cooper of engaging in a history of discovery abuse and of making self-serving objections to impermissibly narrow the scope of discovery. In response, Cooper filed a memorandum in opposition to

---

[2]    The tire at issue is the Wildcat LT All Terrain tire, sized LT225/75R16 (load range E), which was manufactured at Cooper's plant in Findlay, Ohio, during the week of October 10-16, 1999.

[3]    Specifically, the plaintiffs allege that the tire was defective because of: "(1) improper skim bonding between the upper and lower steel belts in the subject tire, (2) ineffective and/or permeable inner liner, (3) lack of tread belt wedge, (4) ineffective anti-oxidants or anti-ozonants, [and] (5) lack of nylon cap plies." Pet'r App. at 480 (Pls. Mem. in Supp. of Mot. to Compel Disc. from Def. Cooper Tire & Rubber Co. and Req. for Oral Argument, dated June 21, 2007).

the motion to compel in which it reiterated its arguments about the definition of similar tires and the burden for requesting trade secrets and also argued that some discovery requests sought information about different cases, claims, and tires. In their reply, the plaintiffs noted, *inter alia*, that the issue of notice was a part of their complaint, they bear the burden on notice at trial, and their requests would assist them in meeting this burden.

The magistrate declined to accept Cooper's view of similar tires and compelled Cooper to comply with the discovery requests with the exception of requests regarding information in other complaints or suits brought against Cooper. In coming to this conclusion, the magistrate noted that discovery is proper "'regarding any matter, not privileged, that is relevant to the claim or defense of any party.'" *Id.* at 785 (Mem. Decision & Order, dated Aug. 17, 2007) (quoting Fed. R. Civ. P. 26(b)(1) (2006)). Although the magistrate did indicate that discovery was not limited to issues raised in the pleadings, he also recognized that the 2000 amendments to the Federal Rules of Civil Procedure "direct[ed] parties and the courts to 'focus on the actual claims and defenses involved in the action' in determining relevance for purposes of discovery." *Id.* at 786 (quoting Fed. R. Civ. P. 26 advisory committee's note (2000)).

Additionally, the magistrate rejected Cooper's contention that the plaintiffs bore the burden of demonstrating substantial similarity of the tires at this stage and noted that the plaintiffs would face this burden when they sought to admit the

evidence at trial. He also reasoned that the definition of substantial similarity might be more relaxed due to the plaintiffs' "broad theory of the case." *Id.* at 787. Ultimately, the magistrate rejected Cooper's arguments about substantial similarity because he determined they were more appropriate to the question of whether the requested information is admissible as opposed to whether it is discoverable.

The magistrate also considered Cooper's arguments regarding the burden of the discovery requests and trade secrets and found them to be without merit. The magistrate, although sympathetic to Cooper's concerns about the amount of discovery requested, found that the plaintiffs should be permitted to engage in discovery in line with their broad theory of the case. The magistrate also cited the plaintiffs' broad theory in determining that they had met their burden of demonstrating that the trade secrets were relevant and necessary to their case. The magistrate further noted that Cooper's proposed protective order had been adopted, which would provide adequate protection against improper disclosure of their trade secrets. Accordingly, the magistrate ordered Cooper to comply with the discovery requests.

Cooper filed objections to the magistrate's order in which it argued that the magistrate erred in applying a relaxed standard of substantial similarity, failed to apply the appropriate standard for discovery of trade secrets, allowed for overbroad discovery, and imposed an undue and impossible burden on Cooper.

The district court heard oral arguments regarding Cooper's objections where Cooper essentially reiterated the arguments that it had previously made in its motions and in its objection to the magistrate's order. Cooper also argued that tread separation is not a defect in and of itself but rather is caused by a defect; the relevant question is then what caused that particular tread to separate.

As to the issue of undue burden, the plaintiffs told the district court that most of the documents had already been produced in other cases and they were willing to retrieve those documents from the electronic database in other cases so that they could be utilized in the instant case. They also volunteered to undertake the printing and copying and to bear those costs. The plaintiffs also argued that Cooper's proposed definition of substantially similar tires was tantamount to defining "substantially similar" as "identical." Pet'r App. at 931 (Miscellaneous Hearing, dated Oct. 29, 2007).

The plaintiffs argued that the appropriate standard was their proffered standard, which had been accepted in other cases, that generally different models of tires would be substantially similar if they share characteristics with the accident-causing tire that are pertinent to the litigation. Here, they said that they sought information on different models with the same critical components that affect tread belt separation. The plaintiffs also contested whether Cooper had demonstrated that their documents contained trade secrets and noted that these documents had been produced in other litigation and a protective order was in

effect.

The district court overruled Cooper's objections and affirmed the magistrate's ruling. Cooper then filed the petition for writ of mandamus now before us. Meanwhile, before the district court, Cooper sought, and was granted, a stay of the disputed discovery pending our resolution of this petition.

## II. DISCUSSION

Cooper seeks a writ of mandamus vacating the district court's order and directing the district court to apply the correct legal standards under Rule 26(b) in making its discovery ruling. Cooper's main arguments are that the district court impermissibly defined the scope of discovery in a manner that conflicts with the 1983, 1993, and 2000 amendments to Rule 26(b) and that the district court ordered the production of documents containing trade secrets without applying the correct standard for such documents. Specifically, Cooper asserts that the district court applied an erroneous standard in five ways: (1) by failing to require the plaintiffs to demonstrate that the documents were relevant to a claim or defense; (2) by failing to require the plaintiffs to show that good cause existed for the discovery of documents that were relevant to the subject matter of the action and not specifically to a claim or defense; (3) by applying a relevance test based on the plaintiffs' broad theory of the case that allegedly conflicts with the language and purpose of the 1993 and 2000 amendments to the Rule; (4) by failing to apply

the limitations imposed by Rule 26(b)(2)(iii);[4] and (5) by allowing discovery of trade secrets that were not proven to be relevant and necessary. Before addressing the merits of Cooper's claims, we must first address the standards for the issuance of a writ of mandamus and the requirements of Rule 26(b).

## A. Writ of Mandamus Standard

A writ of mandamus differs in many important respects from a direct appeal. Most significantly, the standard for granting the writ differs from that for reversing on appeal. "Although a simple showing of error may suffice to obtain reversal on direct appeal, a greater showing must be made to obtain a writ of mandamus." *Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 655 (10th Cir. 1984). Accordingly, mandamus is not a substitute for an appeal. *Id.* at 654. Rather, a writ of mandamus is a "drastic remedy, and is 'to be invoked only in extraordinary circumstances.'" *Id.* (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) (per curiam)).

Unlike an appeal, a writ of mandamus is used "only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Allied Chem. Corp.*, 449 U.S. at 35

---

[4] Throughout this opinion we refer to the 2006 version of Fed. R. Civ. P. 26 (2006). After the district court ruled on Cooper's discovery objections, Rule 26 was amended as part of the restyling of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26 advisory committee's note (2007). Although our analysis would not change based on the restyling because the changes to Rule 26 are only stylistic, *id.*, we cite the rule as it was in force at the time of the district court's decision.

(internal quotation marks omitted). "Only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy." *Id.* Therefore, we will grant a writ only when the district court has "acted wholly without jurisdiction or so clearly abused its discretion as to constitute usurpation of power." *United States v. Carrigan*, 804 F.2d 599, 602 (10th Cir. 1986) (internal quotation marks omitted).

"When the district court errs in deciding a legal issue, it necessarily abuses its discretion." *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179, 1184 (10th Cir. 2006). However, the Supreme Court has cautioned against relying on a label such as "abuse of discretion" to justify issuing the writ. *Will v. United States*, 389 U.S. 90, 98 n.6 (1967); *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665 n.7 (1978). There must be more than what we would typically consider to be an abuse of discretion in order for the writ to issue. *See Paramount Film Distrib. Corp. v. Civic Center Theater, Inc.*, 333 F.2d 358, 361 (10th Cir. 1964) ("The adverse effects which uncontrolled discovery has . . . are apparent, but again we cannot say on this record that the trial judge has here abdicated his judicial function nor is it such a *gross* abuse of discretion as to warrant the issuance of the writ." (emphasis added) (citing *Parr v. United States*, 351 U.S. 513 (1956); *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21 (1943); *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379 (1953)). It is not appropriate to issue a writ "when the most that could be claimed is that the district courts have erred in ruling on matters within

their jurisdiction." *Schlagenhauf v. Holder*, 379 U.S. 104, 112 (1964) (internal quotation marks omitted).

Three conditions must be met before a writ of mandamus may issue. First, because a writ is not a substitute for an appeal, "'the party seeking issuance of the writ must have no other adequate means to attain the relief he desires.'" *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) (alterations omitted) (quoting *Kerr v. U.S. Dist. Court for N. Dist. of Cal.*, 426 U.S. 394, 403 (1976)). Second, the petitioner must demonstrate that his right to the writ is "'clear and indisputable.'" *Id.* at 381 (quoting *Kerr*, 426 U.S. at 403). Finally, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.*

For guidance in determining whether the writ may issue, we have identified five "nonconclusive guidelines." *United States v. McVeigh*, 119 F.3d 806, 810 (10th Cir. 1997) (per curiam). These guidelines are:

> (1) whether the party has alternative means to secure relief; (2) whether the party will be damaged in a way not correctable on appeal; (3) whether the district court's order constitutes an abuse of discretion; (4) whether the order represents an often repeated error and manifests a persistent disregard of federal rules; and (5) whether the order raises new and important problems or issues of law of the first impression.

*In re Qwest Commc'ns*, 450 F.3d at 1184 (internal quotation marks omitted).

Although writs of mandamus may be best known for their traditional application—compelling a government official to perform a nondiscretionary duty

owed to a plaintiff, *see Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 168-69

(1803)—the writ is not so limited. For instance, writs of mandamus have been

invoked when a district court displayed a disregard of the Federal Rules of Civil

Procedure. *Will v. United States*, 389 U.S. at 95-96 (citing *La Buy v. Howes*

*Leather Co.*, 352 U.S. 249 (1957)). Because Cooper argues that the district

court's order amounted to such a disregard for these rules, we conclude that it is

proper for us to entertain a petition for writ of mandamus in this context. *See*

*also Barclaysamerican Corp.*, 746 F.2d at 654 (recognizing that a writ of

mandamus may be issued to vacate a district court's discovery order requiring the

disclosure of privileged information).[5]

## B. Federal Rules of Civil Procedure Rule 26(b)

Our consideration of whether the district court has usurped its power must

begin with an examination of the Rule that it is alleged to have failed to

apply—Rule 26 of the Federal Rules of Civil Procedure. The Federal Rules of

---

[5]     In petitions for writ of mandamus that involve the discovery of
privileged information, the petitioner must prove that "(1) disclosure of the
allegedly privileged or confidential information renders impossible any
meaningful appellate review of the claim of privilege or confidentiality; and (2)
the disclosure involves questions of substantial importance to the administration
of justice." *Barclaysamerican Corp.*, 746 F.2d at 654-55 (internal quotation
marks omitted). Part of Cooper's claim involves trade secrets, which arguably
could entail a similar analysis as privileged information—although we have no
occasion here to decide that question. The thrust of Cooper's claim is that the
district court disregarded the Federal Rules of Civil Procedure in ordering
discovery. Therefore, we need not address the merits of this two-part privilege
test in examining our ability to entertain the petition.

Civil Procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. The rules recognize the "affirmative duty of the court to exercise the authority conferred by these rules to ensure that civil litigation is resolved not only fairly, but also without undue cost or delay." Fed. R. Civ. P. 1 advisory committee's note (1993). Cooper argues that the district court failed to properly administer the rules, focusing mainly on two provisions of Rule 26(b). We address the legal standards identified in each provision in turn. In so doing, we also give weight to the advisory committee's notes that accompany Rule 26. *See United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002); *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986); *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444 (1946); *Esposito v. United States*, 368 F.3d 1271, 1275 (10th Cir. 2004).

The first provision that Cooper alleges the district court violated describes the scope of discovery that is typically available: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). This is a change in the rule that was implemented in the 2000 Amendments. Fed. R. Civ. P. 26 advisory committee's note (2000). Prior to that time, the available scope of discovery was that which was relevant to the *subject matter* of the action. *Id.* However, the amendment did not entirely eliminate discovery on the subject matter of the action. The rule also states: "For *good cause*, the court may order discovery of any matter relevant to

the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1) (emphasis added).

This change implemented a two-tiered discovery process; the first tier being attorney-managed discovery of information relevant to any claim or defense of a party, and the second being court-managed discovery that can include information relevant to the subject matter of the action.[6] *See, e.g.*, 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.41[1] (3d ed. 2007) [hereinafter *Moore's*]; 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2008 (2d ed. 2008) [hereinafter *Federal Practice*]; Thomas D. Rowe, Jr., *A Square Peg in a Round Hole? The 2000 Limitation on the Scope of Federal Civil Discovery*, 69 Tenn. L. Rev. 13, 17 (2001). Accordingly, when a party objects that discovery goes beyond that relevant to the claims or defenses, "the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter

---

[6] Indeed, if we expand our consideration of Rule 26 to include the mandatory discovery of Rule 26(a), which is not at issue here, there are three layers to the discovery process: mandatory disclosure under Rule 26(a), attorney-managed discovery relevant to a claim or defense, and broader, court-managed discovery. *See* Christopher C. Frost, Note, *The Sound and the Fury or the Sound of Silence? Evaluating the Pre-Amendment Predictions and Post-Amendment Effects of the Discovery Scope-Narrowing Language in the 2000 Amendments to Federal Rule of Civil Procedure 26(b)(1)*, 37 Ga. L. Rev. 1039, 1055 (2003) (citing Paul V. Niemeyer, *Here We Go Again: Are the Federal Discovery Rules Really in Need of Amendment?*, 39 B.C. L. Rev. 517, 524 (1998)).

- 14 -

of the action." Fed. R. Civ. P. 26 advisory committee's note (2000).[7]  This good-cause standard is intended to be flexible.  *Id.*  When the district court does intervene in discovery, it has discretion in determining what the scope of discovery should be.  "[T]he actual scope of discovery should be determined according to the reasonable needs of the action.  The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested."  *Id.*

Cooper argues that under the 2000 amendments the "concept of relevance is no more expansive in discovery than at trial" and that the use of the term "relevant" in Rule 26 has the same meaning as when it is used in the Federal Rules of Evidence.  Pet'r Br. at 19.  That may not be the case.  *See* 7 *Moore's*, *supra*, § 37.22[2][a] ("[T]he standard for determining whether information is relevant for purposes of pretrial discovery is substantially broader than the standard for relevance during trial.").  In one respect, the term "relevance" clearly is broader than "admissibility" at trial:  for purposes of discovery, "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  For reasons explained below, it is not necessary in this case to expand

---

[7]       "To put it in the terms colloquially used by litigators who seek more court management of contentious discovery, the amended rule's second tier aims to provide 'adult supervision' to contain possible squabbles when any party seeks and may engage in broader subject-matter discovery." Rowe, *supra*, at 18.

- 15 -

the definition of "relevant" evidence beyond that which would be admissible at trial in support of a claim or defense or that which appears reasonably calculated to lead to the discovery of evidence that would be so admissible.

As to the second provision, Cooper alleges that the district court erred in not balancing the considerations identified in Rule 26(b)(2)(iii). Under that rule:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: . . . (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2). To make this determination, the district court may, after reasonable notice, act on its own initiative or it may act pursuant to a motion for a protective order. *Id.* Rule 26(b)(1) also notes: "All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)." The advisory committee's note indicates that "[t]his otherwise redundant cross-reference has been added to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery." Fed. R. Civ. P. 26 advisory committee's note (2000).

The advisory committee's note also explains that the 2000 amendments to Rule 26(b) generally were intended "to involve the court more actively in regulating the breadth of sweeping or contentious discovery." *Id.* Indeed, beginning with the 1983 amendments, the committee has amended Rule 26(b)

with the intention of encouraging more judicial involvement in discovery. *See* Fed. R. Civ. P. 26 advisory committee's note (1983) ("The rule contemplates greater judicial involvement in the discovery process and thus acknowledges the reality that it cannot always operate on a self-regulating basis."); Fed. R. Civ. P. 26 advisory committee's note (1993) ("Textual changes are then made . . . to enable the court to keep tighter rein on the extent of discovery.").

In the 2000 amendments, the advisory committee "determined expressly not to review the question of discovery *abuse*," but rather chose "to focus on the architecture of discovery rules and determine whether modest changes could be effected to reduce the costs of discovery, to increase its efficiency, to restore uniformity of practice, and to encourage the judiciary to participate more actively in case management." Memorandum from Paul V. Niemeyer, Chair, Advisory Committee on Civil Rules, to Hon. Anthony J. Scirica, Chair, Committee on Rules of Practice and Procedure (May 11, 1999), 192 F.R.D. 354, 356-57 (2000).

Finally, Cooper directs part of its argument to the district court's order requiring the discovery of its alleged trade secrets. Specifically, Cooper argues that the district court erred in applying the standard for production of documents containing trade secrets. A protective order may be issued to limit the disclosure of trade secrets. Fed. R. Civ. P. 26(c)(7). When a party seeks such a protective order, it "must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful." *Centurion Indus., Inc. v.*

*Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981) (footnote omitted). If the party makes such a showing, "the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action." *Id.*

The need for the trade secrets should be balanced against the claim of harm resulting from the disclosure. *Id.* "It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure." *Id.* at 326. If the party seeking discovery cannot prove that the information is relevant and necessary, then discovery should be denied. *Id.* at 325. However, if the party meets its burden, "the trade secrets should be disclosed, unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing." *Id.* at 326.

## C. District Court's Discovery Order

We next consider whether, given the legal standards identified *supra*, the writ should issue. For the writ to issue, Cooper must have no other adequate means of relief and Cooper's right to the writ must be "clear and indisputable." *Cheney*, 542 U.S. at 380-81. Additionally, we must be convinced that, in the exercise of our discretion, it is appropriate under the circumstances for the writ to issue. *Id.* After our own careful and independent review of the record, we conclude that neither of the final two conditions for the issuance of the writ are

met.[8]

## 1. Whether the Right to the Writ is Clear and Indisputable

### a. Cooper's Arguments Regarding Rule 26(b)(1)

Cooper argues that the district court did not find that the contested discovery pertained to a nonprivileged matter relevant to a *claim or defense* but, rather, allowed discovery based on the plaintiffs' "broad theory of the case." Cooper claims that the district court never found "good cause" for the broad discovery requests—a predicate for allowing discovery relevant to the subject matter of the action. Cooper also asserts that the district court erred in applying a pre-amendment conception of "relevance" when it noted that relevance is construed more broadly during discovery than at trial.

In ruling on the discovery motions, the magistrate properly invoked the post-amendment version of Rule 26. He also cited a pre-2000 amendment case for the proposition that discovery is broad under the Federal Rules of Civil Procedure. Pet'r App. at 785 (citing *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995)). After doing so, the magistrate noted that the advisory committee's note instructed parties and the court to focus on the claims and defenses for purposes of discovery. In responding to Cooper's argument that

---

[8] We assume without deciding that Cooper has demonstrated that it would have no other adequate means of relief. Because Cooper's petition fails on the other two standards necessary for issuance of the writ, we need not decide this point.

the plaintiffs bore the burden of demonstrating that different products were substantially similar, the magistrate stated that the plaintiffs would bear that burden if they sought to have the information about different products admitted at trial. Then, citing our decision in *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1440 (10th Cir. 1992), the magistrate noted that the substantial similarity requirement may be somewhat relaxed based on the plaintiffs' theory of the case.

Ultimately, the magistrate rejected Cooper's arguments finding them "somewhat misplaced" and "better suited to the more narrow issue of admissibility of certain information, rather than the issue before the court, which is the broader question of whether that information is discoverable." Pet'r App. at 787. He noted that limiting discovery as Cooper proposed could deprive the plaintiffs of discovery supporting their theory, citing the advisory committee's notes to the 2000 amendments' direction to focus on the action's claims.

We first address Cooper's claim that the district court applied the incorrect definition of relevance in endorsing the magistrate's reasoning. This claim has two components: first, the magistrate's statement that there was a "relaxed" requirement of substantial similarity; and second, the magistrate's reliance on the idea that relevant discovery is broader than relevant admissible evidence.

Regarding the first component, we find no error. The magistrate cited *Four Corners Helicopters, Inc.* in noting that "the requirement of substantial similarity

- 20 -

may be somewhat relaxed." Pet'r App. at 787. This is entirely consistent with this court's precedents addressing the substantial similarity requirement in the context of proof of the defendant's awareness of defects in products liability actions. "Substantial similarity depends upon the underlying theory of the case." *Four Corners Helicopters, Inc.*, 979 F.2d at 1440. When the evidence is offered to demonstrate that a highly dangerous condition existed, a high degree of substantial similarity is required. *Id.* "The requirement of substantial similarity is relaxed, however, when the evidence of other incidents is used to demonstrate notice or awareness of a potential defect." *Id.* (citing *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1407 (10th Cir. 1988)). Because the plaintiffs' theory of the case includes the argument that Cooper was on notice of the tread separation problem, the district court was not clearly in error in concluding that information on tires manufactured to specifications other than GTS 5015 could tend to lead to discoverable evidence. *See* Fed. R. Civ. P. 26(b)(1).

With regard to the second aspect of the relevance argument, we cannot conclude on this record that any error by the district court amounted to a gross abuse of discretion such that Cooper could establish that its right to issuance of the writ is clear and indisputable. The 2000 amendments effected a change in the scope of what is relevant for purposes of discovery. However, this change is limited in two respects. First, it changed only the answer to the question of "relevant to what?" In other words, it did not change the definition of the word

- 21 -

"relevance" itself for purposes of discovery but it did change what we are looking to in deciding what is relevant. After the 2000 amendments, a party is entitled to information relevant to the claims and defenses of any party, rather than the subject matter of the action. Second, a broader scope of discovery—matters relevant to the subject matter—is still available if the court determines that the party seeking the discovery has shown good cause for seeking that broader discovery. "The amendment did not change the overall scope of the court's authority to order discovery, but it did alter the scope of discovery available as a matter of right to the attorneys without court authorization." 8 *Federal Practice*, *supra*, § 2008.

Here, it is not clear that the district court believed that plaintiffs' discovery requests went beyond that relevant to the plaintiffs' claims. The magistrate cited the post-2000 amendment rule and the advisory committee's note. Although the magistrate cited a pre-2000 amendment case indicating that discovery is not limited to the pleadings, the magistrate also repeatedly recognized the need to focus on the claims of the parties. The magistrate appears to have concluded that all of the requested discovery was relevant to the plaintiff's claims, rejecting Cooper's narrow concept of what constituted a similar tire.

Cooper essentially seeks to limit the plaintiffs' discovery based upon its own theory of what tires are substantially similar. However, a party should not be limited by its opponent's theory of the case in determining what is discoverable.

*See* 8 *Federal Practice*, *supra*, § 2011. What is "relevant to the claims or defenses depends on the circumstances of the pending action." Fed. R. Civ. P. 26 advisory committee's note (2000). The magistrate determined that the circumstances of the pending action—here, the plaintiffs' theory of the case, based on five specifically alleged design and manufacturing flaws—entitled the plaintiffs to discovery about substantially similar tires. Given the arguments before the magistrate and district court and the discussion in the magistrate's order, it would not be unreasonable to conclude that the magistrate's determination was driven by a conclusion that these "similar tires" were related to the plaintiffs' claims.

To the extent that Cooper now complains that the magistrate judge and the district court failed to distinguish between relevance to the plaintiff's claims and relevance to the subject matter of the lawsuit, this is largely attributable to Cooper's own litigation choices. In the district court, Cooper focused entirely on the definition of similar tires and did not frame its argument in terms of the two-tiered relevancy definition of Rule 26(b)(1). Had it done so, it no doubt would have received a more focused response. It cannot now complain, at the appellate level and on petition for mandamus, that the district court failed to provide legal analysis that Cooper did not ask it to provide.

Cooper argues that the magistrate judges's reliance on the plaintiffs' "broad theory of the case" indicates that the district court went beyond what is relevant

to the "claims and defenses" to allow discovery relevant to the "subject matter" of the lawsuit, without making the necessary finding of good cause. In *Koch v. Koch Industries, Inc.*, 203 F.3d 1202 (10th Cir. 2000), the plaintiff filed a complaint alleging fraud in "entirely indefinite terms, without in fact knowing of any specific wrongdoing by the defendant." 203 F.3d at 1238. We concluded that when a plaintiff "bases massive discovery requests upon . . . nebulous allegations, in the hope of finding particular evidence of wrongdoing, that plaintiff abuses the judicial process." *Id.*

We agree that the mere fact that a plaintiff entertains a "broad theory of the case" does not justify more expansive discovery, unless the discovery is relevant to the plaintiff's actual claims or defenses, or the plaintiff makes a showing of good cause. But "[t]he dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision." Fed. R. Civ. P. 26 advisory committee's note (2000). Based on this record, while we recognize the possibility that the district court erred, we cannot say with a sufficient degree of certainty that this line was crossed.

Unlike *Koch*, the plaintiffs' claims here are not purely speculative. Instead, this is a products liability action where the tread of one of Cooper's tires did, in fact, separate. The plaintiffs identified five specific design and manufacturing flaws that they believe led to the separation. The plaintiffs also alleged that

- 24 -

Cooper had been on notice of the problem of tread separation and yet made no design changes and issued no warnings to consumers. We cannot conclude that the district court's allowance of the discovery at issue here authorized plaintiffs to "abuse the judicial process."

Were it clear that the plaintiffs were seeking discovery that *only* pertained to the subject matter of the action and not their claims, the magistrate would have erred in allowing discovery without a showing of good cause. However, the record before us does not demonstrate that this is such a case. Accordingly, we cannot say that it is clear and indisputable that there was a gross abuse of discretion in allowing this discovery without requiring the plaintiffs to make any good cause showing.

### b. Cooper's Arguments Regarding Rule 26(b)(2)(iii)

Cooper also argues that the district court erred in failing to take into consideration the factors identified in Rule 26(b)(2)(iii). Cooper contends that any time a district court is faced with a discovery dispute, it must explicitly balance the costs and benefits of the proposed discovery, "taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(iii). In this case, it asserts that had the district court considered those factors, "logic and common sense would have compelled the conclusion that most, if not all, of the

contested discovery was neither needed by Plaintiffs nor sufficiently important in resolving the issues to justify the burden and expense of production."  Pet'r Br. at 23.

With regard to Cooper's contention that the discovery requested was unduly burdensome, the magistrate noted that he was "sympathetic to the large amount of discovery requested by Plaintiffs."  Pet'r App. at 788.  But considering plaintiffs' discovery needs, in light of its broad theory of the case, the magistrate ultimately declined to grant Cooper's requested limitations on plaintiffs' discovery requests. In doing so, the magistrate did not, however, expressly find that Cooper's burden or expense of discovery failed to outweigh plaintiffs' likely benefit from the discovery.

Similarly, the district court made no such finding.  However, the district court also considered Cooper's potential burden.  It questioned the parties about the potential burden at the hearing regarding the objections to the magistrate's order.  In response to these questions, the plaintiffs explicitly agreed to bear much of the discovery burden, volunteering to go to the repository where the documents are kept, to print and copy all of the documents, and to allow Cooper to designate documents that were provided in discovery in previous cases and currently available to plaintiffs as discoverable in this case, such that Cooper would not have to go back and review those hundreds or thousands of documents again. With this cost-related information in mind, as well as the circumstances related to

plaintiffs' discovery needs, the district court adopted the magistrate's order

allowing the discovery.

At the outset, we find no authority in this circuit that obligated the district

court to make formal and explicit findings regarding each of the factors identified

in Fed. R. Civ. P. 26(b)(2)(iii).[9] The amended rule includes an "otherwise

---

[9] Cooper claims that this court's decision in *Procter & Gamble Co. v. Haugen*, 427 F.3d 727 (10th Cir. 2005), created such an obligation. However, Cooper attaches too much importance to our statement that the district court "was obligated to take into account" this provision of Rule 26. *Procter & Gamble Co.*, 427 F.3d at 739 n.8. Our statement was made in one footnote and in the context of discussing whether sanctions were appropriate based upon the three options that Procter & Gamble had for cooperating with a discovery order, one of which involved purchasing archival data at a cost of approximately thirty million dollars. *Id.* at 739. We concluded that because it was unclear that the district court had considered what duties Procter & Gamble had to produce the information, it could not conclude that the company acted with the requisite culpability to justify the sanction imposed. *Id.* at 740. The circumstances of that case—a sanction of dismissal over a failure to produce "relevant electronic data," *id.* at 739-40—are markedly different from the circumstances in this case. Furthermore, Cooper's reading of that footnote's language as imposing an obligation on district courts to engage in explicit weighing of the Rule's three subparts certainly is not the only possible one and perhaps not the most natural. For example, as most pertinent here, to the extent that a trial court expressly considers costs-benefit factors appropriate to the discovery requests under the circumstances of the particular case, it is far from clear that the court would not have followed *Proctor & Gamble*'s guidance and "taken into account" the factors of subpart (iii). And, as noted *infra* in the text, the magistrate and the district court in fact explicitly considered Cooper's potential burden and the cost-benefit factors related to plaintiffs' discovery requests. However, we need not reach any definitive conclusions regarding this interpretive point. It is sufficient to note that, without further discussion in *Proctor & Gamble* (or its progeny) from which we might reasonably discern its intended reach, we decline to give this footnote's language the sweeping effect posited by Cooper and, more specifically, to read it as obliging the district court in this case to expressly weigh the factors of Rule 26(b)(2)(iii).

redundant cross-reference" to Rule 26(b)(2) "to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery." Fed. R. Civ. P. 26 advisory committee's note (2000). But, there is no indication that the cross-reference was added to obligate courts to conduct a detailed balancing of the enumerated factors. *See* 8 *Federal Practice*, *supra*, § 2008.1 ("[I]t seems that the three provisions of [Rule 26(b)(2)] should not be treated as separate and discrete grounds to limit discovery so much as indicia of proper use of discovery mechanisms; they do not call for counsel to undertake complex analysis.").

Furthermore, even if we were to decide that a district court must take the Rule's specific cost-benefit factors into account, it would not be patent to us that the district court failed to do so here. *Cf. United States v. Kelley*, 359 F.3d 1302, 1305 (10th Cir. 2004) (stating, in the context of criminal sentencing, "[w]e do not require a ritualistic incantation to establish consideration of a legal issue, nor do we demand that the district court recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider" (internal quotation marks omitted)). The district court considered the resources of the parties and the actual amount at issue and also accepted the magistrate's order, which recognized both Cooper's potential burden, as well as the issues at stake and plaintiffs' discovery needs. Therefore, we cannot conclude that the district court has grossly abused its discretion in its handling of Cooper's burden allegations. Accordingly, Cooper has not established a clear and

indisputable basis for mandamus relief.

### c. Cooper's Arguments Regarding Trade Secrets

Finally, Cooper claims that the district court erred by not applying the proper standards for the production of its documents containing trade secrets. Cooper alleges that the plaintiffs never proved that the disclosure of the documents was relevant and necessary to the action and that the district court found them relevant based only on the plaintiffs' broad theory of the case.

The magistrate stated that he was "convinced" that the plaintiffs had demonstrated that the trade secret documents were relevant and necessary to their case given their "broad theory of the case." Pet'r App. at 788. The magistrate also noted that because Cooper's proposed protective order, in form, had been adopted, he believed that the trade secrets would be adequately protected against improper disclosure.

The plaintiffs provided six reasons why the documents are relevant and necessary, explained that some of these documents may be the best evidence of Cooper's knowing failure to correct a defect, and stated that the opinion of its expert supported their need for the documents. "It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure." *Centurion Indus., Inc.*, 665 F.2d at 326. "Where a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is clear and indisputable." *Allied Chem. Corp.*, 449 U.S. at

36 (internal quotation marks omitted).  Here, the magistrate recognized the proper standard.  Determining whether that standard was met is within the court's discretion.  Accordingly, we cannot conclude that Cooper's right to the writ is clear and indisputable on this issue.

**2.     Whether the Issuance of the Writ is Appropriate Under the Circumstances**

We also conclude that the issuance of the writ is not appropriate under these circumstances.  This situation fails to surpass the high legal hurdle for issuance of the writ; the most that could be said is that the district court possibly erred in ruling on certain matters that were within its jurisdiction.  Even an erroneous ruling in that situation does not justify the issuance of the writ.  *See Bankers Life & Cas. Co.*, 346 U.S. at 382.  In this case there are simply "no special circumstances which would justify the issuance of the writ, such as the persistent disregard of the Rules of Civil Procedure."  *Roche*, 319 U.S. at 31.

If we were to consider this in the framework of our "nonconclusive guidelines" for determining whether to grant mandamus relief, *see McVeigh*, 119 F.3d at 810, we would conclude that, at a minimum, two of the five guidelines are not applicable here.  As discussed *supra*, the district court's order does not constitute a gross abuse of discretion as required for the issuance of the writ.  We also find no evidence that the district court's ruling is representative of a persistent disregard among the district courts in our circuit for the federal rules or

reflects an error often repeated by them in the court-managed portion of discovery.[10]  We need not decide if the other "nonconclusive guidelines" are applicable because we conclude that the absence of a clear abuse of discretion and persistent disregard of the rules demonstrate that the writ should not issue.  *Cf. id.* at 810, 815 (determining that the first, second, and fifth factors were applicable and that the third and fourth factors were related, then indicating "this case really boils down to whether the district court abused its discretion" and denying the petition).  "Only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy."  *Allied Chem. Corp.*, 449 U.S. at 35.  We do not have such exceptional circumstances here.

Furthermore, Cooper did not present most of its arguments to the district court.  Although Cooper now challenges the district court's allegedly improper application of Rule 26(b)(1), Cooper's argument before the district court focused solely on the definition of similar tires.  Nowhere did Cooper even suggest that its

---

[10]  Cooper points to three district court rulings in our circuit, arguing that they are indicative of courts applying a pre-2000 amendment view of Rule 26(b)(1).  Although there may be some confusion in a few district courts, this does not amount to the circumstances that would justify issuing the writ, which include a "willful disobedience of the rules," *Will v. United States*, 389 U.S. at 100, and a persistent practice of disregarding the rules in light of admonishment from reviewing courts, *La Buy*, 352 U.S. at 258 (identifying a "practice" of incorrectly referring cases to a special master after "the Court of Appeals has for years admonished the trial judges" that this is reserved for cases presenting unusual circumstances).  Furthermore, we are  presented with no evidence that *this district court* has frequently and intentionally erred in ruling on discovery matters.  In sum, we conclude that this is not an appropriate circumstance for the issuance of writ.

argument pertained to the distinction between the plaintiffs' claim and the subject matter of the case. Rather, Cooper's argument was framed as a disagreement with the plaintiffs' definition of "substantially similar." Nor did Cooper discuss the factors that it now claims the district court should have balanced under Rule 26(b)(2)(iii).[11] Instead, Cooper claimed that the broad discovery request was burdensome and offered little other argument before the district court. Moreover, Cooper did not refute that the plaintiffs' offers to carry the burden would markedly decrease Cooper's burden. The only argument that was clearly before the district court was Cooper's argument that the plaintiffs did not demonstrate that their request for the trade secrets was relevant and necessary. We will not use mandamus to hold the district court responsible for failing to address arguments that were not before it, particularly where it is not clear that the district court erred. Accordingly, we do not find it appropriate under these circumstances to issue the writ.

## III. CONCLUSION

Cooper has not shown a clear and indisputable right to a writ of mandamus. Any possible errors by the district court in its discovery rulings did not rise to the

---

[11] Indeed, establishing the existence of those factors is likely a burden Cooper bore. *See* 7 Moore's, *supra*, § 37.22[2][d] ("The burden of establishing that the proportionality or good faith requirements have not been met should be placed on the party who opposes the discovery . . . ."). Thus, Cooper's failure to make an argument about each factor before the district court is a further indication that it is not appropriate to issue the writ in these circumstances.

level of a gross abuse of discretion or usurpation of judicial power.  Therefore,

Cooper's petition is **DENIED**.