PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Petitioner-Appellee,*

v.

HEIDI JANELLE SILVER MYERS,

*Respondent-Appellant.*

No. 09-1212

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
John Preston Bailey, Chief District Judge.
(3:07-cr-00055-JPB-DJJ)

Argued: September 23, 2009

Decided: January 28, 2010

Before MICHAEL, GREGORY, and DUNCAN,
Circuit Judges.

Dismissed by published opinion. Judge Duncan wrote the
opinion, in which Judge Michael and Judge Gregory joined.

## COUNSEL

**ARGUED**: Shawn R. McDermott, Martinsburg, West Vir-
ginia, for Appellant. Paul Thomas Camilletti, OFFICE OF
THE UNITED STATES ATTORNEY, Martinsburg, West
Virginia, for Appellee. **ON BRIEF:** William B. Moffitt,

MOFFITT & BRODNAX, LTD., Alexandria, Virginia; Pleasant S. Brodnax, III, LAW OFFICE OF PLEASANT S. BRODNAX, Washington, D.C., for Appellant. Sharon L. Potter, United States Attorney, Wheeling, West Virginia, for Appellee.

---

**OPINION**

DUNCAN, Circuit Judge:

This appeal arises from a convoluted procedural history involving intertwined matters we have considered before. This time we must consider our jurisdiction in light of the recent Supreme Court decision *Mohawk Industries, Inc. v. Carpenter*, No. 08-678, 2009 WL 4573276 (Dec. 8, 2009). Previously, Appellant Heidi Myers appealed a court order enforcing two grand-jury subpoenas *duces tecum* seeking various items. We dismissed her appeal for lack of jurisdiction because she had not been found in contempt. *See United States v. Search of 235 S. Queen St., Martinsburg, W.V.*, 319 F. App'x 197 (4th Cir. 2008) ("*Search of 235 S. Queen St.*"). Meanwhile, in a different case, Myers was served with a trial subpoena under Federal Rule of Criminal Procedure 17(c) seeking the same items. She now appeals a contempt citation for failure to produce those items and challenges the court order that she tried to appeal in *Search of 235 S. Queen St.* For the reasons that follow, we again conclude that we lack jurisdiction and dismiss the appeal.[1]

---

[1]In doing so, we do not and cannot express any opinion regarding the appeal's merits. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005) ("[A] federal court necessarily acts ultra vires when it considers the merits of a case over which it lacks subject-matter jurisdiction." (emphasis omitted)). Myers's substantive arguments remain open for consideration in later proceedings. *See Mohawk*, 2009 WL 4573276, at *7 (noting that "litigants confronted with a particularly injurious or novel privilege ruling have several potential avenues of review apart from collateral order appeal").

## I.

## A.

Myers was an attorney licensed to practice in West Virginia. On December 22, 2005, she incorporated her law practice into Myers Law Group, PLLC. In fall 2006 the United States Attorney's Office began investigating Myers's possible fraudulent billing of the West Virginia Public Defender Services. This miscellaneous matter was docketed 06-mj-33 and assigned to Judge Frederick Stamp, Jr., in the United States District Court for the Northern District of West Virginia.

In November 2006, a search team executed a search warrant at Myers's law office. Although many boxes of documents were seized, the team failed to find all the closed case files and electronic records described in the warrant. Thus, on November 17, 2006, the investigating grand jury issued two subpoenas *duces tecum* ordering Myers to appear on December 5, 2006, bringing all remaining closed case files, her server, and her backup hard drive.[2] On the appointed day, however, Myers failed to appear.[3]

Instead, on December 19, 2006, Myers moved to quash the

[2]One subpoena requested: "ALL CLOSED CASE FILES IN POSSESSION OF MYERS LAW GROUP, HEIDI J. MYERS AND/OR NANCY BURKHART." J.A. 295. The other requested: "TOWER TYPE SERVER AND BACKUP HARD DRIVE OF, BELONGING TO, POSSESSED BY, NOW OR IN THE PAST, MYERS LAW GROUP, HEIDI J. MYERS, NANCY BURKHART." J.A. 294.

[3]Because she failed to appear, Myers was indicted for criminal contempt. This criminal matter was docketed 06-cr-55 and assigned to Judge Stamp. We note, as he did, that many pleadings and orders concerning the grand-jury subpoenas were erroneously filed in this matter rather than in 06-mj-33, which has complicated our consideration on appeal. Following a May 2007 bench trial, Myers was convicted of criminal contempt in January 2008. We affirmed on appeal. *See United States v. Myers*, 302 F. App'x 201 (4th Cir. 2008).

grand-jury subpoenas based on the work-product doctrine and attorney-client privilege. After the district court denied the motion, the government moved for an order directing Myers to produce the subpoenaed items to the magistrate judge. On March 20, 2007, the court ordered Myers to give the government all subpoenaed items that she considered non-privileged by April 9, 2007, and to produce all other subpoenaed items to the court by March 30, 2007, for privilege review.

In April 2007, Myers produced several boxes of documents to the court for privilege review ("produced items"), but these boxes did not contain all of the subpoenaed items. On April 18, 2007, the district court ordered Myers to produce all other subpoenaed items by May 15, 2007 ("missing items").[4] Myers moved for clarification because she had faxed a letter to the United States Attorney's Office in February 2007 invoking her Fifth Amendment privilege against self-incrimination with regard to producing the missing items. In turn, the government moved for Myers to show cause why she should not be found in contempt.

On June 13, 2007, a magistrate judge conducted a hearing on both motions. He also reviewed the produced items. On July 11, 2007, the magistrate found that some produced items were protected by the attorney-client privilege and the work-product doctrine. He also found that the Fifth Amendment protected only personal documents and items created or received before December 22, 2005, when Myers incorporated her law practice.

On November 19, 2007, the district court adopted this Fifth Amendment ruling but concluded that the produced and missing items were not protected by the attorney-client privilege or work-product doctrine because the government made a prima facie case under the crime-fraud exception. Accord-

---

[4]Thus, two different groups of items are involved here—the produced items and the missing items.

ingly, the court ordered Myers to provide to the government any missing items she admitted were corporate documents and to provide to the United States privilege team the other missing items.[5] The privilege team would then review these items and confer with Myers. On April 22, 2008, after the government moved for clarification, the district court ordered the magistrate judge to hand the produced items over to the government.

In December 2007, Myers appealed Judge Stamp's November 19, 2007, order concerning the missing items. Significantly for our analysis, she did not challenge his April 22, 2008, order concerning the produced items possessed by the magistrate judge. On November 4, 2008, we dismissed Myers's appeal for lack of jurisdiction. *See Search of 235 S. Queen St.*, 319 F. App'x at 201. We reasoned that the November 19, 2007, order was not immediately appealable because "Myers retain[ed] possession of the disputed documents and ha[d] not been cited with civil contempt for her refusal to turn them over." *Id.* at 198. We explained that "[o]rders enforcing subpoenas . . . are normally not considered final" and that "[t]o obtain immediate review of such a district court enforcement order, the party to whom it is issued must defy it so that a contempt order, which is considered final, is entered against him." *Id.* at 200 (internal quotations omitted).[6]

---

[5]Courts sometimes allow privilege review by government attorneys uninvolved in the matter; they are called a "privilege team" or "taint team." *See United States v. Jackson*, No. 07-35, 2007 WL 3230140, at *5 (D.D.C. Oct. 30, 2007) (discussing when courts have allowed privilege review by taint teams). *See also* United States Attorneys' Manual § 9-13.420 (2009) (stating that a "privilege team . . . consisting of agents and lawyers not involved in the underlying investigation" should be used when seized items may include privileged material).

[6]Notably, this rationale would not have applied to the April 22, 2008, order that Myers chose not to appeal.

### B.

Meanwhile, in June 2007 the same grand jury involved in 06-mj-33 indicted Myers on one count of conspiracy to defraud the United States, ninety-nine counts of mail fraud, and twelve counts of wire fraud. The indictment alleges that Myers, when appointed to represent indigent clients, submitted invoices to the West Virginia Public Defender Services for work not actually performed and charged an incorrect hourly rate under West Virginia law for work performed by non-attorneys. This criminal matter was docketed 07-cr-55 and assigned to Judge John Bailey in the United States District Court for the Northern District of West Virginia. After the indictment was issued, the grand jury expired and another was not empanelled.

On July 10, 2007, in the criminal matter, the government served Myers with a trial subpoena *duces tecum* under Federal Rule of Criminal Procedure 17(c). This subpoena required Myers to deliver to the magistrate judge the same missing items requested by the November 2006 grand-jury subpoenas.[7] On July 11, 2007, Myers moved to quash the trial subpoena and requested a protective order. In January 2009, after a long delay during Myers's earlier appeal, Judge Bailey denied the motion to quash. The government then moved for Myers to show cause why she should not be found in civil contempt.

On February 13, 2009, the district court held a hearing on the show-cause motion. During the hearing, Myers's attorney requested a contempt order, explaining: "[I]t is the only way that I can appropriately confer jurisdiction on the Fourth Circuit to review the rulings that have been made with regard to the[ ] subpoenas." J.A. 214. In response, the court found

---

[7]Specifically, the trial subpoena requested: "ALL CLOSED CASE FILES, TOWER TYPE SERVER AND BACKUP HARD DRIVE OF, BELONGING TO, POSSESSED BY, NOW OR IN THE PAST, MYERS LAW GROUP, PLLC." J.A. 106.

Myers in civil contempt and added: "So that we have a clean record for you to take to the Fourth Circuit . . . , I would adopt the reasoning set forth in Judge Stamp's opinion dated November 19, 2007 in Case Number 3:06MJ33 . . . as well as his order of April 22nd, 2008 in the same case." J.A. 220.

On February 17, 2009, the district court issued an order that memorialized the rulings made during the hearing. The court also stayed Myers's incarceration for thirty days and continued the trial until January 2010. Myers now appeals the February 17, 2009, order finding her in civil contempt.

II.

To determine whether we have jurisdiction, we must first clarify what matters could be reviewed in this appeal. Myers appeals Judge Bailey's February 17, 2009, order finding her in civil contempt. She concedes that contempt was proper but challenges Judge Stamp's November 19, 2007, order compelling her to produce the missing items for privilege review and his April 22, 2008, order directing the magistrate judge to hand over the produced items to the government.

In *Maggio v. Zeitz*, the Supreme Court ruled that one who appeals a contempt order may not challenge the order alleged to have been violated but may only challenge whether the contempt order itself was proper. 333 U.S. 56, 69-70 (1948). In that case, the petitioner had disobeyed a court order to turn over assets during a bankruptcy proceeding, had been found in civil contempt, and had then challenged the turnover order on appeal from the contempt order. Declining to review the turnover order, the Supreme Court explained that "a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." *Id.* at 69; *see also United States v. Rylander*, 460 U.S. 752, 756 (1983) (holding that the Ninth Circuit incorrectly allowed a defendant to challenge a discovery order during a subsequent con-

tempt proceeding); *United States v. Butler*, 211 F.3d 826, 831 (4th Cir. 2000) (affirming a district court barring a defendant from contesting a discovery order during a subsequent contempt hearing).

*Maggio* was later narrowed by *United States v. Ryan*, 402 U.S. 530 (1971), where the Court implied that a discovery order may indeed be challenged during a subsequent contempt proceeding. In that case, the defendant argued that his appeal from a court order enforcing a subpoena *duces tecum* should be allowed because obeying the subpoena would be unduly burdensome. The Court disagreed, reasoning:

> If . . . the subpoena is unduly burdensome or otherwise unlawful, [one] may refuse to comply and litigate those questions in the event that contempt or similar proceedings are brought against him. Should his contentions be rejected at that time by the trial court, they will then be ripe for appellate review.

*Ryan*, 402 U.S. at 532 (applying *Cobbledick v. United States*, 309 U.S. 323, 328 (1940)); *see also Mohawk*, 2009 WL 4573276, at *7 (suggesting that a discovery order may be challenged on direct appeal from a subsequent contempt order, "at least when the contempt citation can be characterized as a criminal punishment").

*Ryan* addressed the tension between its reasoning and *Maggio* in a footnote. Noting a different case, the footnote states: "*Walker v. Birmingham*, 388 U.S. 307 . . . (1967), is not to the contrary. Our holding that the claims there sought to be asserted were not open on review of petitioners' contempt convictions was based upon the availability of review of those claims at an earlier stage." *Ryan*, 402 U.S. at 532 n.4. *Walker* upheld Alabama's refusal to allow demonstrators to challenge a preliminary injunction during a contempt proceeding when the demonstrators failed to challenge the injunction before disobeying it. *Walker*, 388 U.S. at 320-21. Thus, *Ryan* osten-

sibly carved out an exception to *Walker* where one challenges a court order on appeal from a subsequent contempt order and no earlier appellate review was available. *See* 11A Charles Alan Wright et al., Federal Practice and Procedure § 2960 (2009) (concluding that "[a] sensible reconciliation of the Supreme Court cases on this point is that the validity of an order can be challenged in a contempt proceeding for violation of the order only if there was no opportunity for effective review of the order before it was violated"). We believe this exception should apply equally to *Maggio*, which announced a rule that, for our purposes, cannot be distinguished from the one affirmed in *Walker*.

Accordingly, *Maggio* and *Ryan* together indicate that an individual appealing a contempt order cannot challenge matters other than whether contempt was proper and, unless earlier appellate review was available, the order alleged to have been violated. In this case, Myers conceded that contempt was proper. During oral argument, her counsel stated that Judge Stamp's November 19, 2007, and April 22, 2008, orders are what Judge Bailey found violated in the February 17, 2009, contempt order being appealed.[8] This cannot be true for Judge Stamp's April 22, 2008, order directing the magistrate judge to provide the produced items to the government. Because that order was directed at someone other than Myers, she cannot have been found in contempt for violating it. As for Judge Stamp's November 19, 2007, order, *Search of 235 S. Queen St.* shows that earlier appellate review was indeed unavailable. Therefore, only that November 19, 2007, order could be reviewed in this appeal.

---

[8]We assume the truth of this statement, which the government never contradicted, merely for the purpose of determining our jurisdiction. We have not considered and decline to say whether a district judge may find a party to litigation in contempt for violating an order that another judge issued in separate litigation. Furthermore, we note that the record does not make clear what Myers was found to have violated. District courts issuing contempt orders should clearly specify the order violated.

### III.

Having determined what we could review if we reached this appeal's merits, we now consider our jurisdiction to hear the appeal. With few narrow exceptions, our jurisdiction extends only to "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. *See United States v. Juvenile Male*, 554 F.3d 456, 464 (4th Cir. 2009). Generally, a final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). This "final-judgment rule" aims to combine all reviewable stages from a proceeding into one appeal and thus to prevent the harassment and cost of interlocutory appeals. *See Cobbledick*, 309 U.S. at 325.

Applying this rule, the Supreme Court has concluded that a party to litigation may not immediately appeal a civil-contempt order.[9] *See Fox v. Capital Co.*, 299 U.S. 105, 107 (1936) ("The rule is settled in this Court that except in connection with an appeal from a final judgment or decree, a party to a suit may not review upon appeal an order fining or imprisoning him for the commission of a civil contempt."); *Doyle v. London Guar. & Accident Co.*, 204 U.S. 599, 603 (1907); *Carbon Fuel Co. v. United Mine Workers of Am.*, 517 F.2d 1348, 1349 (4th Cir. 1975). Therefore, because Myers has appealed a civil-contempt order issued in litigation brought against her, the final-judgment rule normally would bar this appeal. *See United States v. Johnson*, 801 F.2d 597, 599 (2d Cir. 1986) (holding that *Fox* applies to criminal defendants). Myers does not dispute this conclusion.[10] Instead,

---

[9]By contrast, criminal-contempt orders are immediately appealable, and a civil-contempt order may be immediately appealed by a nonparty. *See* 15B Charles Alan Wright et al., Federal Practice and Procedure § 3917 (2009).

[10]Notably, Myers does not argue that *Fox* was overruled by *Cobbledick* and its progeny. In *Byrd v. Reno*, 180 F.3d 298 (D.C. Cir. 1999), the D.C. Circuit found this argument "not so easily rejected," but concluded that "*Doyle* and *Fox* remain good law" because "[t]he Supreme Court has never expressly [held] that a party may obtain interlocutory review of a civil contempt order." *Id.* at 301-02.

she asserts jurisdiction under two exceptions to the final-judgment rule.

## A.

First, Myers asserts jurisdiction under the *Perlman* doctrine. In *Perlman v. United States*, the Supreme Court allowed an interlocutory appeal from an order directing the court clerk to produce documents that Perlman owned and claimed were privileged. 247 U.S. 7, 12-13 (1918). The Court later reasoned that, without immediate review, Perlman would have been "powerless to avert the mischief of the order," *id.* at 13, because "the custodian could hardly have been expected to risk a citation for contempt in order to secure . . . an opportunity for judicial review," *Ryan*, 402 U.S. at 534. Accordingly, the *Perlman* doctrine provides that "a discovery order directed at a disinterested third party is treated as an immediately appealable final order." *Church of Scientology of Ca. v. United States*, 506 U.S. 9, 18 n.11 (1992). Myers argues that the *Perlman* doctrine applies here because Judge Stamp's April 22, 2008, order directed a third party to provide the produced items to the government. As we have explained, however, that order falls outside the scope of our review because it could not have been the basis for the contempt order that Myers appeals. Her argument must therefore be rejected.[11]

## B.

Second, Myers asserts jurisdiction under the "collateral order doctrine" of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). Although "final decisions" in 28 U.S.C. § 1291 typically are judgments terminating an action, *Cohen* held that § 1291 also encompasses "a small set of prejudgment orders that are 'collateral to' the merits of an action and 'too important' to be denied immediate review." *Mohawk*,

---

[11]As we noted earlier, Myers might have directly appealed the April 22, 2008, order under the *Perlman* doctrine. However, she chose not to do so.

2009 WL 4573276, at *3 (quoting *Cohen*, 337 U.S. at 546)).
"'That small category includes only decisions [1] that are con-
clusive, [2] that resolve important questions separate from the
merits, and [3] that are effectively unreviewable on appeal
from the final judgment in the underlying action.'" *Id.* at *5
(quoting *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42
(1995)). The Supreme Court has stressed that these "condi-
tions are stringent," *Will v. Hallock*, 546 U.S. 345, 349
(2006), and that the collateral order doctrine "must 'never be
allowed to swallow the general rule that a party is entitled to
a single appeal, to be deferred until final judgment has been
entered,'" *Mohawk*, 2009 WL 4573276, at *5 (quoting *Digital
Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868
(1994)).

Having appealed a contempt order, Myers challenges Judge
Stamp's November 19, 2007, order directing her (1) to pro-
duce any missing items she conceded were not protected by
the Fifth Amendment and (2) to give all other missing items
to the United States privilege team for privilege review.[12] In
determining whether the collateral order doctrine applies, we
address each directive separately.

1.

First, Myers was directed to produce any missing items she
conceded were not protected by the Fifth Amendment.
Although Myers insisted that all missing items were protected

---

[12]We reiterate the distinction between the missing items—the only mat-
ter before us—and the produced items now in the magistrate judge's pos-
session. At oral argument, Myers's counsel asserted that the risk of
imminent disclosure of the produced items to the government supports
allowing an exception to the final-judgment rule. To the extent that such
a risk exists, however, it stems from Myers's failure to appeal the April
22, 2008, order directing the magistrate judge to hand over the produced
items. We also rely on the government's assurance at oral argument that
it will comply with the magistrate judge's recommendations regarding
protection of client data.

by the attorney-client privilege, Judge Stamp found that the crime-fraud exception vitiated that protection. Myers now argues that the contempt order on appeal would be "effectively unreviewable on appeal from the final judgment in the underlying action" because producing the missing items would irrevocably undermine the attorney-client privilege.[13] *Mohawk*, 2009 WL 4573276, at \*5 (internal quotations omitted).

The Supreme Court's recent *Mohawk* decision directly addresses this argument. In that case, the petitioner argued that a district court's discovery order implicating the attorney-client privilege should be immediately appealable under the collateral order doctrine. The Court explained that, when determining whether an order would later become effectively unreviewable, "the decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'" *Id.* (quoting *Will*, 546 U.S. at 352-53). Courts doing this analysis should "not engage in an 'individualized jurisdictional inquiry,'" *id.* (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 473 (1978)), but should focus "on 'the entire category to which a claim belongs,'" *id.* (quoting *Digital Equip.*, 511 at 868). Applying this standard to discovery orders affecting the attorney-client privilege, *Mohawk* acknowledged the importance of that privilege but reasoned that "postjudgment appeals generally suffice to protect the rights of litigants and assure the vitality of the attorney-client privilege" because "[a]ppellate courts can remedy the improper disclosure of privileged material . . . by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." *Id.* at 6.

---

[13]Myers also noted the work-product doctrine, but her challenge has always focused instead on the attorney-client privilege. Therefore, we consider her challenge only regarding the attorney-client privilege.

The petitioner argued, however, that the attorney-client privilege not only prohibits using privileged information during trial but also "provides a right not to disclose the privileged information in the first place." *Id.* at 7 (internal quotations omitted). Admitting that "an order to disclose privileged information intrudes on the confidentiality of attorney-client communications," *Mohawk* nonetheless found that "deferring review until final judgment does not meaningfully reduce the *ex ante* incentives for full and frank consultations between clients and counsel." *Id.* The Court explained that "clients and counsel are unlikely to focus on the remote prospect of an erroneous disclosure order, let alone on the timing of a possible appeal," and added that, "were attorneys and clients to reflect upon their appellate options, they would find that litigants confronted with a particularly injurious or novel privilege ruling have several potential avenues of review apart from collateral order appeal." *Id.* Such avenues include asking the district court to certify interlocutory appeal under 28 U.S.C. 1292(b), requesting a writ of mandamus, incurring sanctions under Federal Rule of Civil Procedure 37(b)(2), and directly appealing a criminal contempt order issued for failure to disclose the privileged information, "at least when the contempt citation can be characterized as a criminal punishment." *Id.*

Even though Myers has appealed a civil contempt order arising from a discovery order rather than the underlying discovery order itself, *Mohawk* clearly controls our decision. The Court made plain that delaying review for a challenge invoking the attorney-client privilege does not imperil any substantial public interest or other value enough to render the order being appealed "effectively unreviewable on appeal from the final judgment in the underlying action." *Id.* at 5. Therefore, we find the collateral order doctrine inapplicable regarding Myers's current challenge to Judge Stamp's order directing her to produce missing items.[14]

---

[14]We note that the collateral order doctrine does not apply for another reason as well. Myers argues that the contempt order appealed "resolve[s]

## 2.

Second, Myers was directed to provide any missing items that she believed were protected by the Fifth Amendment to the United States privilege team for privilege review. We have held that when a corporate custodian challenges a subpoena under the Fifth Amendment, the district court must carefully examine the subpoenaed items to determine whether they are personal or corporate and then consider whether producing any personal items would be testimonial. *See United States v. Wujkowski*, 929 F.2d 981, 984-85 (4th Cir. 1991). Given this precedent, the district court ordered Myers to produce the missing items for privilege review. Because she refused, the court was never able to decide whether they are protected. Accordingly, the November 19, 2007, order does not "conclusively determine the disputed question" that Myers has raised. *Hallock*, 546 U.S. at 349. Therefore, once again, we believe that the collateral order doctrine does not apply.

---

important questions separate from the merits" because Judge Bailey adopted Judge Stamp's finding that the crime-fraud exception applied. *Mohawk*, 2009 WL 4573276, at *5 (internal quotations omitted). The crime-fraud exception applies where attorney-client "communications are made in furtherance of a crime, fraud, or other misconduct." *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985). Judge Stamp applied the exception because the government produced evidence that Myers defrauded the West Virginia Public Defender Services by submitting false invoices. The same allegations and evidence underlie her indictment in the criminal matter from which Myers now appeals. Therefore, our deciding whether the crime-fraud exception applies would require delving into factual and legal considerations enmeshed in the merits of the underlying dispute. For that reason, the collateral order doctrine cannot apply. *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 527-28 (1988) (noting that the collateral order doctrine does not extend to orders involving considerations that are "enmeshed in the merits of the dispute"); *S.C. State Bd. of Dentistry v. F.T.C.*, 455 F.3d 436, 441 (4th Cir. 2006) (noting that under the collateral order doctrine the order being reviewed must not involve "considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action").

We recognize the irony inherent in our decision, namely, that Myers must comply with the November 19, 2007, order to appeal her contempt citation for violating that order. We are constrained, however, by the procedural posture in which Myers raised the issue. She has argued that her closed case files are privileged but has consistently refused to allow the court to evaluate whether the privilege applies. Myers cannot adjudicate her own Fifth Amendment claim. Rather, the district court must evaluate her claim in the first instance. *See In re Three Grand Jury Subpoenas, Dated Jan. 5, 1988*, 847 F.2d 1024, 1028-29 (2d Cir. 1988) (finding that the Fifth Amendment does not protect refusal to produce documents for *in camera* inspection). We will not consider her Fifth Amendment claim until the district court has had the opportunity.[15]

IV.

Because Myers has not appealed a final judgment under 28 U.S.C. § 1291 and cannot satisfy the *Perlman* doctrine or collateral order doctrine, we lack appellate jurisdiction. Accordingly, this appeal is

*DISMISSED*.

---

[15]Myers does not waive her Fifth Amendment privilege or opportunity for review simply by turning over items for privilege review. *See United States v. Zolin*, 491 U.S. 554, 568 (1989) ("[D]isclosure of allegedly privileged materials to the district court for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege.").