FILED
United States Court of Appeals
Tenth Circuit

May 6, 2013

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

COPAR PUMICE COMPANY, INC.;
KELLY ARMSTRONG; RICHARD P.
COOK; SHIRLEY A. COOK;
DEBBIE CANTRUP,

      Defendants-Appellants.

No. 12-2104

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:09-CV-01201-JAP-KBM)**

---

Submitted on the briefs:

Joseph E. Manges of Comeau, Maldegen, Templeman & Indall, LLP, Santa Fe, New Mexico, for Defendants-Appellants.

Ignacia S. Moreno, Assistant Attorney General; Kenneth J. Gonzales, United States Attorney; Ruth Fuess Keegan, Assistant United States Attorney; William B. Lazarus, Andrew A. Smith, Dominika N. Tarcynska, Elizabeth Ann Peterson, Attorneys, Environment & Natural Resources Division, Department of Justice, Washington, D.C.; Steve Hattenbach, Office of General Counsel, U. S. Department of Agriculture, Albuquerque, New Mexico, of Counsel, for Plaintiff-Appellee.

---

Before **BRISCOE**, Chief Judge, **BRORBY**, Senior Judge, and **MURPHY**, Circuit Judge.

**BRISCOE**, Chief Judge.

This is an interlocutory appeal arising out of an action filed by the United States against Defendants Kelly Armstrong, Debbie Cantrup, Richard Cook, Shirley Cook (collectively "the Cooks"), and Copar Pumice Company, Inc. ("Copar") for trespass, conversion, and unjust enrichment. The claims are based on allegations that the Cooks and Copar removed and used undersized pumice from their mine in violation of their settlement agreement with the United States, the Jemez National Recreation Area Act ("JNRAA"), 16 U.S.C. § 460jjj, and applicable regulations. Although the case remains pending in the district court, the Cooks and Copar have filed an interlocutory appeal from discovery orders requiring their former and present law firms to produce documents containing legal advice counsel gave to them regarding the legality of mining, transporting, processing, and marketing pumice from their mine. Specifically, the Cooks and Copar appeal the denial of their motion for protective order and their motion to quash subpoenas, contending that this court has appellate jurisdiction under the collateral order, Perlman, and pragmatic finality doctrines. The United States has filed a motion to dismiss this appeal for lack of jurisdiction. We grant the motion

2

and dismiss the appeal.[*]

## I

### *Background and Previous Litigation*

Before addressing the jurisdictional question, we will briefly describe the parties' nearly ten-year legal dispute involving the Cooks' and Copar's mining operations in the New Mexico Santa Fe National Forest.

Under the General Mining Law of 1872, 30 U.S.C. § 22 et seq., "citizens may enter and explore the public domain and, if they find valuable mineral deposits, may obtain title to the land on which such deposits are located by application to the Department of the Interior." United States v. Coleman, 390 U.S. 599, 600 n.1 (1968) (quotation omitted). Before a mineral may be "locatable" under the General Mining Law, "the substance discovered must not only be a 'valuable mineral' . . . , but must also be the type of valuable mineral that the 1872 Congress intended to make the basis of a valid claim." Andrus v. Charlestone Stone Prods. Co., 436 U.S. 604, 611 & n.8 (1978). The Common Varieties Act, 30 U.S.C. § 611, excluded "common variety" pumice from the General Mining Law's definition of "valuable mineral deposit." Accordingly, common variety pumice is not locatable under the General Mining Law.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

3

However, pumice that is "valuable because [it] has some property giving it distinct and special value" is not considered common variety, and, therefore, is locatable under the General Mining Law. Id. § 611 (prescribing that "'block pumice[,]' which occurs in nature in pieces having one dimension of two inches or more," is also locatable). A citizen who discovers a valuable mineral deposit and follows the procedures to locate the deposit has the right to exclusive possession of the land for mining purposes, but the government maintains title to the land. United States v. Locke, 471 U.S. 84, 86 (1985). A citizen may also patent a mining claim to obtain title to the land. "Patenting, however, is not required, and an unpatented mining claim remains a fully recognized possessory interest." Id.

In 1988, the Cooks located 23 mining claims (known as the Brown Placer Claims) in the Jemez Mountains in the Santa Fe National Forest. These claims were leased to Copar—a closely held company owned by Richard Cook's three daughters, Kelly Armstrong, Debbie Cantrup, and Katharine Fishman—to mine pumice. Aplee. Suppl. App., at 22. In 1993, while the Cooks were in the process of obtaining a patent for their claims, Congress passed the Jemez National Recreation Area Act ("JNRAA"), 16 U.S.C. § 460jjj. The Act created the Jemez National Recreational Area and mandated that no mining patents shall be issued for land within the recreational area. Id. § 460jjj-2(a)(1). Under the Act, the Secretary of Agriculture must "examine all unpatented mining claims, including

4

those for which a patent application has been filed, within the recreation area" and determine whether "the elements of a contest are present." Id. § 460jjj-2(d). The Act then required that the Secretary of the Interior determine the validity of such claims. Id.

After examining the Brown Placer Claims, the Forest Service contested the validity of all claims except claims nine through twelve, which became known as the El Cajete Mine. See Copar Pumice Co. v. Tidwell, 603 F.3d 780, 788 (10th Cir. 2010). The Department of the Interior examined the Brown Placer Claims and agreed that only claims nine through twelve were valid and that Copar could mine these claims for stonewash pumice that was 3/4 inches or larger ("+3/4" pumice") because such pumice was an uncommon variety that is used in the stonewash laundry industry to abrade denim fabric to look "worn." See id. at 784, 788 (quotation omitted). In 1997, the Santa Fe National Forest approved a ten year plan of operations for Copar to mine +3/4" pumice from the El Cajete Mine. Under the plan of operation, Copar would separate the locatable pumice (3/4" or larger) from the common variety pumice, which would be set aside for reclamation.

The Cooks administratively appealed the Department of Interior's decision that some of their mining claims were invalid. The Cooks also filed a takings claim against the government in the Court of Federal Claims in response to the enactment of the JNRAA. Cook v. United States, 42 Fed. Cl. 788 (1999). The

Court of Federal Claims granted partial summary judgment to the Cooks on their takings claim. Id. at 795. Thereafter, in 2002, the Cooks and the government settled the takings claim and the administrative appeal by entering into an agreement wherein the Cooks would retain Brown Placer Claims nine through twelve as unpatented mining claims with the understanding that they could not dispose of common variety pumice from these claims. Aplee. Suppl. App., at 18-19. In return, the government paid the Cooks approximately four million dollars. Id. at 19.

In 2002, Copar stated that it was crushing the +3/4" pumice to sell for common variety purposes other than use in the laundry industry. The Forest Service determined that any +3/4" pumice removed and not sold for laundry industry purposes rendered the pumice common variety in violation of the settlement agreement, JNRAA, and applicable regulations. When Copar failed to provide documentation to confirm that it was selling the pumice only for laundry industry purposes, the Forest Service issued a Notice of Noncompliance in 2003, which required Copar to provide complete records of its pumice sales since 2002. Copar filed an administrative appeal to this Notice, and the Forest Service affirmed. Copar, 603 F.3d at 790. Copar then filed suit in the United States District Court for the District of New Mexico seeking review and reversal of the Forest Service's decision. The district court denied Copar's petition for review, and this court affirmed. Id. at 793.

6

*Present Litigation*

In 2009, the United States brought the present action against Copar and the Cooks alleging trespass, conversion, and unjust enrichment arising from the operation of the El Cajete Mine. Aplt. App. at 33, 42-44. In their Answers, Copar and the Cooks[1] claimed that the removal of +3/4" pumice was legal. Id. at 64, 73. In February 2011, the government served interrogatories requesting that Defendants "[i]dentify and describe all legal advice provided to Defendants regarding the legality of the mining, transportation, processing, marketing, trade, gift or sale of pumice at or taken from Brown Placer Mining Claims 9-12," as well as requests for production of related documents. Id. at 115. Defendants objected and asserted that such information and documents were within the attorney-client and work-product privileges. Id. at 114. In July 2011, Defendants responded to the government's continued requests for such information by stating that their good faith defense had been documented in pleadings and memoranda filed in previous litigation to which the government was a party. Aplee. Suppl. App., at 10.

The government then moved to compel production of the documents contending that Defendants had waived the attorney-client privilege by asserting a good faith defense based on advice of legal counsel. Aplt. App., at 107-09. On

---

[1] For simplicity's sake, the Cooks and Copar will hereafter be collectively referred to as Defendants.

October 26, 2011, after conducting a hearing, the magistrate judge determined that Defendants had waived the privilege by asserting a good faith defense based on legal advice, and granted the government's motion to compel. Id. at 157-58.

Defendants did not comply with this order. The government then served three subpoenas for production of documents: one on Defendants' current counsel, and two on Defendants' previous counsel. Id. at 186, 193, 200. The subpoenas directed production of "[a]ll documents reflecting legal advice provided to [Defendants] . . . regarding the legality of mining, transporting, processing, marketing, trade, gift, or sale of pumice at or taken from Brown Placer Mining Claims 9-12 (El Cajete Mine, Santa Fe National Forest)." Id. at 200. Defendants moved to quash the subpoenas as overly broad and imposing an undue burden. Id. at 177-78, 182-83. Shortly thereafter, Defendants filed a motion for protective order arguing that the scope of the waiver was limited to whether the Forest Service could lawfully limit the "end use" of the locatable pumice to only laundry industry purposes. Id. at 208-09. Defendants also filed a notice withdrawing their previously asserted good faith defense based on the advice of counsel. Id. at 216.

The magistrate judge denied Defendants' motion to quash and motion for protective order. Id. at 289. The magistrate judge determined that Defendants had waived their privilege by affirmatively asserting a defense that put counsel's advice at issue. Id. at 286-87 (applying the waiver inquiry articulated in Hearn v.

8

Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).  Alternatively, the magistrate judge concluded that Defendants had waived their privilege under New Mexico law as well.  Id. at 287.

Defendants filed an objection to the magistrate judge's order.  Id. at 309. See Fed. R. Civ. P. 72(a).  The district court overruled Defendants' objections and found that "[l]egal advice given in connection with air quality proceedings, environmental challenges to permits, and civil rights matters [were] not discoverable under the [magistrate judge's order]."  Aplt. App. at 394.  The district court also clarified that the government had previously conceded that it would not seek documents containing attorney work product or documents generated after Defendants' sale of pumice ceased in January 2010.[2]  Id. at 395, 396 n.10.  Because the government had conceded these restrictions on the scope

---

[2]  In January 2011, an administrative law judge from Department of the Interior's Office of Hearings and Appeals determined that the Brown Placer Mining Claims nine through twelve were invalid, as of a prior hearing held in 2010.  Aplee. Suppl. App., at 13.  The claims were invalid because the pumice was common variety and no longer legally locatable due to falling prices of stone wash pumice.  Id. (citing the "intervening[,] precipitous declines in the markets for stone wash pumice, which . . . resulted in . . . declines in the price derived for Copar stone wash pumice" and concluding that "Copar's operating costs would always exceed their qualifying revenues, always resulting in a net loss"); see generally Copar, 603 F.3d at 785 (describing the two tests used to determine whether a mineral qualifies as a valuable mineral deposit:  (1) the prudent man test, which requires the mineral be "of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine"; and, (2) the marketability test, which "requires a mining operator to show that the mineral can be extracted, removed and marketed at a profit" (quotation omitted)).

9

of its discovery requests, the district court concluded that it was unnecessary for the magistrate judge to have addressed these issues in her order. Id.

Three days after the district court's order, the magistrate judge conducted a telephone conference with the parties and issued an order reiterating the district court's rulings regarding the scope of the government's discovery requests. Id. at 398. The magistrate judge further ordered that a copy of her order explaining the scope of the requested discovery be sent to the subpoenaed law firms. Id. One of the firms that previously represented Defendants complied with the order by submitting documents to the district court, which the district court ordered sealed pending our ruling in this appeal. Aplt. Resp., at 4 & n.1. Defendants now seek review of the magistrate judge's order denying Defendants' second motion for protective order, the district court's order overruling Defendants' objections to the magistrate judge's order, and the magistrate judge's order clarifying the scope of the requested discovery. Aplt. App. at 283-89, 383-99. Defendants argue this court has interlocutory jurisdiction to review the discovery orders appealed.

II

Generally, this court's jurisdiction is limited to review of "final decisions of the district courts." 28 U.S.C. § 1291. A decision is "'final' when it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." In re Motor Fuel Temperature Sales Practices Litig., 641 F.3d 470, 481 (10th Cir. 2011) (quotation omitted), cert. denied, 132 S. Ct. 1004 (2012). In

certain limited circumstances, however, we have exercised jurisdiction over an interlocutory appeal under the collateral order doctrine (also known as the Cohen doctrine), the Perlman doctrine, and the pragmatic finality doctrine. Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949); Perlman v. United States, 247 U.S. 7 (1918).

> While recognizing that most interlocutory orders disadvantage or inflict some degree of harm on one of the parties to a litigation, this court must balance that concern against the need for efficient judicial administration, the delay caused by interlocutory appeals, and the burden on appellate courts imposed by fragmentary and piecemeal review of the district court's myriad rulings in the course of a typical case.

Boughton v. Cotter Corp., 10 F.3d 746, 748 (10th Cir. 1993). Generally, however, "orders for the production of documents during the course of litigation are not 'final orders' subject to immediate appellate review." Id. Defendants argue that jurisdiction arises under all three doctrines.

*Collateral Order Doctrine*

While 28 U.S.C. § 1291 grants jurisdiction over "final decisions," the Supreme Court has "long given" § 1291 a "practical rather than a technical construction." Cohen, 337 U.S. at 546. In Cohen, the Court articulated a "small class" of collateral rulings that were sufficiently final to satisfy § 1291. Id. To fall within this small class, the order must: "(1) finally decide (2) an important question collateral to (or separate from) the merits of the underlying proceeding, and (3) [be] 'effectively unreviewable' after final judgment." In re Motor Fuel,

11

641 F.3d at 482 (quotation omitted). "Unless all three requirements are established, jurisdiction is not available under the collateral order doctrine." Boughton, 10 F.3d at 749. Under the third Cohen factor, we examine whether "the entire category of rulings to which the claim belongs can be adequately vindicated on review of a final judgment or by other means," not whether the particular circumstances warrant review. In re Motor Fuel, 641 F.3d at 482-83. The parties focus on the third Cohen factor, and we will do the same.

In Mohawk Industries v. Carpenter,130 S. Ct. 599 (2009), the Supreme Court held that "the collateral order doctrine does not extend to disclosure orders adverse to the attorney-client privilege," because "[e]ffective appellate review can be had by other means." Id. at 609. In so holding, the Court "reiterate[d] that the class of collaterally appealable orders must remain narrow and selective in its membership," and stressed that "full respect" be given to the Rules Enabling Act, 28 U.S.C. § 2071, which "designat[ed] rulemaking, not expansion by court decision, as the preferred means for determining whether and when prejudgment orders should be immediately appealable." Id. (citing 28 U.S.C. §§ 2072(c), 1292(e)) (quotation omitted).

Nevertheless, Defendants attempt to distinguish Mohawk by focusing on whether the subpoenaed documents were sought from a nonparty, or from a party to the litigation. Defendants argue that the Mohawk decision was limited to "situations where the privileged information was obtained from a party." Aplt.

12

Resp., at 6-7. As support for this limitation, Defendants partially quote a sentence from the Mohawk decision for the proposition that "a party could obtain review of 'particularly injurious or novel privilege rulings' by disobeying the order and receiving sanctions or being held in contempt." Id. (quoting Mohawk, 130 S. Ct. at 607).

Defendants' quote omits the remaining part of the sentence. The Supreme Court stated that "litigants confronted with a particularly injurious or novel privilege ruling have several potential avenues of review apart from collateral order appeal." Mohawk, 130 S. Ct. at 607 (emphasis added). Specifically, the Court delineated three potential avenues: 1) the party could ask the district court to certify an appeal under 28 U.S.C. § 1292(b); 2) the party could petition the court of appeals for a writ of mandamus; and 3) the party could defy the disclosure order and incur sanctions or be held in contempt when "characterized as a criminal punishment."[3] Id. at 607-08. While the third avenue of review is arguably unavailable to Defendants because they were not the custodian of the subpoenaed documents, the first and second avenues of review are available. Defendants do not mention these available avenues, or explain how the unavailability of one of these three avenues would render Mohawk wholly

---

[3] Criminal contempt orders are immediately appealable, but a civil contempt order appealed by a party to a pending proceeding is not. See Consumers Gas & Oil, Inc. v. Farmland Indus., Inc., 84 F.3d 367, 370 (10th Cir. 1996).

distinguishable. Even if Defendants had made these arguments, we do not agree with their assertion that Mohawk is distinguishable here because the contempt-citation avenue of review is foreclosed.[4] And even if all of these avenues of review are foreclosed, Defendants may still seek post-judgment review, which "generally suffice[s] to protect [their] rights . . . and ensure the vitality of the attorney-client privilege." Id. at 606.

Defendants argue that post-judgment appeal is inadequate here because "the erroneously broad blanket waiver and disclosure at issue . . . cannot be remedied on appeal." Aplt. Resp., at 7. But the Court recognized that review after final judgment is imperfect and that "an order to disclose privileged material may, in some situations, have implications beyond the case at hand." Mohawk, 130 S. Ct. at 608. Regardless of these implications, "[t]hat a fraction of orders adverse to the attorney-client privilege may nevertheless harm individual litigants in ways that are 'only imperfectly reparable' does not justify making all such orders

[4] The Sixth Circuit reached the same conclusion in Holt-Orsted v. City of Dickson, 641 F.3d 230, 237 (6th Cir. 2011). In Holt-Orsted, the district court held that the attorney-client privilege did not protect allegedly privileged information sought during the deposition of the plaintiff's former legal counsel. Id. at 233. The Sixth Circuit concluded that the district court's order was not immediately appealable. "Although [the] attorney . . . [was] a disinterested nonparty holding the allegedly privileged materials, and therefore the contempt-citation avenue of review [was] for all practical purposes foreclosed, plaintiffs, asserting the attorney-client privilege, ultimately can avail themselves of a post-judgment appeal which, under Mohawk, suffices 'to protect the rights of the litigants and preserve the vitality of the attorney-client privilege.'" Id. at 240 (quoting Mohawk, 130 S. Ct. at 603).

14

immediately appealable as of right under § 1291." Id. Accordingly, Defendants' broad argument that post-judgment appeal is inadequate here is not persuasive. See also United States v. Myers, 593 F.3d 338, 347 (4th Cir. 2010) (applying Mohawk's reasoning to an appeal of a contempt order arising from a discovery order because "[t]he Court made plain that delaying review for a challenge invoking the attorney-client privilege does not imperil any substantial public interest or other value enough to render the order being appealed 'effectively unreviewable on appeal from the final judgment in the underlying action'" (quoting Mohawk, 130 S. Ct. at 605)).

Finally, Defendants argue the merits of their asserted privilege by claiming the district court erred in applying federal common law, rather than state law, to determine whether, and to what extent, they waived their privilege. Aplt. Resp., at 8-9. Even if the district court erred regarding the merits of its ruling, however, that fact would not affect our jurisdictional inquiry. Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868 (1994) (warning that the issue of appealability under § 1291 should be evaluated without regard to a "particular injustice" that may be "averted" by immediate appeal (alteration and quotation omitted)). Whether jurisdiction arises under the collateral order doctrine depends on the class of claims as a whole, and not on the specific facts of the case. The Supreme Court has ruled that post-judgment appeals generally suffice to review a party's claim against disclosure orders adverse to an asserted attorney-client

15

privilege, and Defendants' attempt to argue otherwise based on the specific circumstances here is contrary to the Supreme Court's ruling in Mohawk. As parties to the litigation, Defendants have available to them effective review of the district court's discovery orders. We conclude the third Cohen factor has not been met, which forecloses jurisdiction under the collateral order doctrine.

*Perlman* Doctrine

Next, Defendants assert we have jurisdiction under the Perlman doctrine. Generally, the denial of a motion to quash a subpoena is not a final order and not immediately appealable, United States v. Ryan, 402 U.S. 530, 532 (1971), because the subpoenaed person may refuse to comply with the subpoena and be held in contempt, "at [which] point, the witness' situation becomes so severed from the main proceeding as to permit an appeal." Cobbledick v. United States, 309 U.S. 323, 328 (1940). A complication arises, however, when the subpoenaed person is not the privilege holder; in such circumstances, the privilege holder may attempt to invoke the Perlman doctrine.

Louis H. Perlman, the subject of a grand jury investigation, had previously produced records to the court clerk in a patent infringement suit. 247 U.S. at 8-9. While the records were in the court clerk's custody, the government sought to obtain these records to pursue perjury charges. Id. at 8-10. Because Perlman was not the record custodian and, therefore, "was powerless to avert the mischief of the order," the Court allowed an interlocutory appeal from the district court's

16

order directing the clerk to produce to a grand jury the documents that Perlman claimed were privileged. Id. at 12-13. In the approximately one hundred years since Perlman, courts have interpreted this doctrine to apply in varying circumstances.

> This court has
>
> interpreted Perlman to mean that appellate jurisdiction arises "when an interlocutory appeal is sought by an intervenor who claims a justiciable interest in preventing a third party's disclosure of documents or testimony, and the party subject to the subpoena indicates that he or she will produce the records or testify rather than risk contempt."

In re Grand Jury Subpoena, 709 F.3d 1027, 1029 (10th Cir. 2013) (quoting In re Grand Jury Proceedings, 616 F.3d 1172, 1179 (10th Cir. 2010)). This circuit has narrowly interpreted Perlman to apply in criminal grand jury proceedings, which this court again acknowledged in our recent opinion in In re Motor Fuel, 641 F.3d at 485. See also In re Grand Jury, 709 F.3d at 1029. Defendants attempt to distinguish In re Motor Fuel by asserting that this court "simply stated it was not aware of any case 'that extends Perlman beyond criminal grand jury proceedings.'" Aplt. Resp., at 11 (quoting In re Motor Fuel, 641 F.3d at 485). Again, Defendants omit the language following this partial quote. When quoted in full, this court stated:

> We are aware of no case . . . that extends Perlman beyond criminal grand jury proceedings. We decline to do so here. The underpinnings of the Perlman rule—the impossibility of an appeal later on—simply do not apply with equal force to a subpoena

17

directed at a non-party as part of discovery in civil litigation.

In re Motor Fuel, 642 F.3d at 485 (emphasis added).

Defendants do acknowledge that this court has not extended Perlman to civil actions, but cite favorable rulings from other circuit courts as support for extending Perlman to apply in the present case. Aplt. Resp., at 11-12 (citing Ross v. City of Memphis, 423 F.3d 596, 599-600 (6th Cir. 2005) (determining jurisdiction in civil action arose under the Perlman doctrine because one defendant could not "prevent [another defendant] from disclosing allegedly privileged information")).

We note, however, that all of the cases that Defendants cite in support of further extending Perlman to civil actions were decided before Mohawk, and, further, courts that have applied Perlman more broadly in civil actions have recognized that Mohawk limits interlocutory appeals of discovery orders regarding attorney-client privilege when brought by a party in civil litigation. See, e.g., Holt-Orsted, 641 F.3d at 237-38 (discussing in a civil action the tension between Mohawk and Perlman and holding that "where the privilege holder is a party to the litigation with recourse in a post-judgment appeal, we conclude that Perlman no longer affords jurisdiction to hear this interlocutory appeal"); Wilson v. O'Brien, 621 F.3d 641, 643 (7th Cir. 2010) (noting that after Mohawk, "[o]nly when the person who asserts a privilege is a non-litigant will appeal from the final decision be inadequate," but ultimately dismissing appeal as moot). Even if

18

we were not bound by our precedent limiting Perlman to criminal grand jury proceedings, the persuasiveness of the cases relied upon by Defendants to extend Perlman here—a civil action where the privilege holder is a party—is greatly undermined, if not entirely foreclosed, by Mohawk.

Defendants next argue that interlocutory jurisdiction arises under Perlman for the same reasons the Ninth Circuit found Perlman applicable in United States v. Krane, 625 F.3d 568 (9th Cir. 2010). Aplt. Resp., at 13. In Krane, however, the privilege holder was not a party to civil litigation. Rather, the privilege holder was a corporation, Quellos Group, that intervened and appealed the district court's order compelling Quellos's former counsel to produce allegedly privileged documents that the government had subpoenaed in anticipation of a criminal trial of two Quellos executives. 625 F.3d at 570-71. In holding Perlman applicable, the court in Krane noted that "for all practical purposes, this appeal [was] Quellos's only opportunity to seek review of the district court's order adverse to its claims of attorney-client privilege," because "neither the privilege holder nor the custodian of the relevant documents [were] parties to the underlying criminal proceedings." Id. at 573, 575 (concluding appeal was moot because the defendants entered guilty pleas). Because Quellos had only intervened in the criminal action for the limited purpose of responding to the government's motion to compel compliance with the subpoena, it had no further opportunity for effective review. See Order, United States v. Greenstein, No. CR08-0296 RSM

19

(W.D. Wash. June 8, 2010), ECF No. 210.

Unlike the privilege holder in <u>Krane</u>, Defendants are parties to civil litigation and can appeal any allegedly erroneous rulings after entry of the final judgment, which the Supreme Court has confirmed as generally sufficient in the attorney-client privilege context:

> In our estimation, postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege. Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence.

<u>Mohawk</u>, 130 S. Ct. at 606-07.

Even if we were to disregard the Supreme Court's decision in <u>Mohawk</u>,[5]

---

[5]  A few circuit courts of appeals have discussed the impact of the <u>Mohawk</u> decision on the <u>Perlman</u> doctrine, with varying results.  The Third Circuit has explicitly declined to extend <u>Mohawk</u>'s holding to the <u>Perlman</u> doctrine, "at least in the grand jury context."  <u>In re Grand Jury</u>, 705 F.3d 133, 138 n.3, 145-46 & n.11 (3rd Cir. 2012) (vacating a prior opinion, 680 F.3d 328, 340-41, "to avoid any confusion—particularly with respect to [the court's] dicta in that opinion regarding . . . <u>Mohawk</u>").  The Ninth Circuit has reasoned that "<u>Perlman</u> and <u>Mohawk</u> are not in tension" because <u>Mohawk</u> arose under the <u>Cohen</u> collateral order doctrine, a separate and distinct doctrine from <u>Perlman</u>.  <u>Krane</u>, 625 F.3d at 572.  The Sixth and Seventh Circuits have stated that <u>Mohawk</u>'s reasoning—that post-judgment relief provides sufficient reviewability of disclosure orders involving the attorney-client privilege—forecloses operation of the <u>Perlman</u> doctrine when the privilege holder is a party to civil litigation.  <u>Holt-Orsted</u>, 641 F.3d at 236-40 ("[T]he <u>Mohawk</u> decision has altered the legal landscape related to collateral appeals of discovery orders adverse to the attorney-client privilege and narrowed the category of cases that qualify for interlocutory review."); <u>Wilson</u>, 621 F.3d at 643 ("<u>Mohawk Industries</u> calls <u>Perlman</u> and its successors into question, because, whether the order is directed against a litigant or a third party,

(continued...)

20

<u>Perlman</u> would still not apply here because this court has previously held that <u>Perlman</u> only applies when "any other review" is otherwise impossible. <u>In re Motor Fuel</u>, 641 F.3d at 485 ("The underpinnings of the <u>Perlman</u> rule—the impossibility of an appeal later on—simply do not apply with equal force to a subpoena directed at a non-party as part of discovery in civil litigation."). Because Defendants, as civil litigants, have other review available, they cannot immediately appeal the discovery orders at issue under the <u>Perlman</u> doctrine. Given this court's narrow interpretation of <u>Perlman</u>, we do not have jurisdiction under the <u>Perlman</u> doctrine.

*Pragmatic Finality Doctrine*

Finally, Defendants argue that jurisdiction is proper pursuant to the pragmatic finality doctrine. Under this doctrine, a "court may assume jurisdiction where the danger of injustice by delaying appellate review outweighs the inconvenience and costs of piecemeal review." <u>Albright v. UNUM Life Ins. Co. of Am.</u>, 59 F.3d 1089, 1093-94 (10th Cir. 1995) (quotation omitted). This court

---

[5](...continued)
an appeal from the final decision will allow review of the district court's ruling. Only when the person who asserts a privilege is a non-litigant will an appeal from the final decision be inadequate."). In a recently published opinion, we noted the tension between <u>Perlman</u> and <u>Mohawk</u> in the context of a grand jury subpoena, but did not resolve the matter in that case. <u>In re Grand Jury Subpoena</u>, 709 F.3d at 1029 n.1. We decline to do so here. Because the <u>Perlman</u> doctrine is presently foreclosed by our precedent, it is unnecessary for us to determine the effects, if any, of the <u>Mohawk</u> decision on <u>Perlman</u> in the context of criminal grand jury proceedings.

21

has described the pragmatic finality doctrine as "more subjective" than the collateral order doctrine, involving "ad hoc adjustments to the final decision requirement of § 1291." Boughton, 10 F.3d at 751 (alteration and quotation omitted).

To the extent this doctrine is still recognized, it must be "invoked only in truly 'unique instances,'" and not when the dispute can be adequately reviewed on appeal from a final judgment. Id. at 752; see Albright, 59 F.3d at 1094 ("[T]he practical finality exception has lived a checkered life in both our court and the United States Supreme Court." (quotation omitted)); see also Johnson v. Jones, 515 U.S. 304, 315 (1995) ("[W]e do not now in each individual case engage in ad hoc balancing to decide issues of appealability."). We have questioned the pragmatic finality doctrine's "continued viability for the last fifteen [plus] years," and continue to do so after Mohawk. See In re Motor Fuel, 641 F.3d at 486. However, even if this doctrine could be applied, it would not benefit Defendants.

Defendants argue that the present appeal is a unique or exceptional circumstance because this court has not decisively answered whether federal or state law governs the privilege asserted. However, Defendants neither explain the importance of deciding this legal issue on immediate appeal, nor have Defendants shown that the danger of injustice by delaying appellate review outweighs the inconvenience and costs of piecemeal review. Defendants' interests in immediate review center on their desire to prevent information they deem privileged from

22

disclosure, but the Supreme Court has already found such interests insufficient to warrant immediate appeal.  See Mohawk, 130 S. Ct. at 606-07.  To the extent this doctrine is still recognized, it does not apply here.

*Mandamus*

Defendants alternatively ask that this court construe their notice of appeal as a petition for writ of mandamus under 28 U.S.C. § 1651(a).[6]  Mandamus is not a substitute for appeal after a final judgment and is a "drastic remedy" that is "invoked only in extraordinary circumstances."  In re Cooper Tire & Rubber Co., 568 F.3d 1180, 1186 (10th Cir. 2009) (quotation omitted).  "It is not appropriate to issue a writ when the most that could be claimed is that the district courts have erred in ruling on matters within their jurisdiction."  Id. at 1187 (quotation omitted).  The writ of mandamus issues only in exceptional circumstances to correct "a clear abuse of discretion, an abdication of the judicial function, or the usurpation of judicial power."  Boughton, 10 F.3d at 751 (quotation omitted).  This is a very high bar to overcome.

Generally, before a writ of mandamus may issue, the petitioner must satisfy three conditions:  the party seeking writ must have no other adequate means for

---

[6]  Under Federal Rule 21(a) of Appellate Procedure, the party seeking a writ of mandamus must file a petition with the circuit court.  Even if we construed Defendants' appeal as a petition for writ of mandamus that satisfied the requirements of Rule 21(a), Defendants would not be entitled to mandamus relief.  See Boughton, 10 F.3d at 751 (finding that writ would be denied even if construing the appeal as a petition for writ of mandamus).

23

relief sought, the party's right to the writ must be clear and undisputable, and the issuing court must be satisfied that the writ is appropriate. In re Cooper Tire, 568 F.3d at 1187. When a writ of mandamus implicates the discovery of privileged information, two factors must first be established: "disclosure of the allegedly privileged or confidential information renders impossible any meaningful appellate review of the claim of privilege or confidentiality"; and "the disclosure involves questions of substantial importance to the administration of justice." Barclaysamerican Corp. v. Kane, 746 F.2d 653, 654-55 (10th Cir. 1984).

Defendants have satisfied neither requirement. Because Defendants have an adequate avenue for relief and have not shown that disclosure of the information requested renders impossible any meaningful post-judgment appellate review, mandamus is not warranted. Defendants claim the unresolved legal question regarding whether federal or state law governs the privilege here warrants the issuance of a writ of mandamus, but Defendants do not explain how the discovery dispute here is of substantial importance to the administration of justice. See Boughton, 10 F.3d at 751 (denying mandamus in civil case despite involving "an unsettled issue of law" regarding privileges). Post-judgment appeal following the entry of a final appealable order can remedy any error the district court may have made in its discovery rulings. Similarly, Defendants have not asserted or explained how the district court's rulings were a clear usurpation of power or a "gross abuse of discretion." See In re Cooper Tire, 568 F.3d at 1186.

24

Accordingly, we would deny the writ even if we were to construe Defendants'

appeal as a petition for writ of mandamus.

III

This interlocutory appeal is dismissed for lack of jurisdiction.